Roeder v. Trotter.

CLAUDE S. REEDER *v.* TROTTER, COUNTY JUDGE.

(*Knoxville.* September Term, 1919.)

1. **PARLIAMENTARY LAW.** Presiding officer entitled to vote as a member.

   Where the presiding·officer is a member of the body, and, as such member, entitled to vote with the other members, the fact that he was chosen to act as presiding officer will not deprive him of the privilege. (*Post, pp.* 41-44.)

   Acts cited and construed: Acts 1919, ch. 736; Acts 1887, ch. 148.

   Cases cited and approved: People v. Church of Atonement, 48 Barb. (N. Y.), 606; Grown v. Foster, 88 Me., 49; Wooster v. Mullins, 64 Conn., 340.

   Cases cited and distinguished: People ex rel. v. Rector, etc., 48 Barb. (N. Y.), 603; Jacobs v. San Francisco, 100 Cal., 121; Cate v. Martin, 70 N. H., 135.

   Codes cited and construed: Secs. 493, 5592, 6015 (S.).

2. **COUNTIES.** County judge may not vote in matters before county court.

   In view of Shannon's Code, sections 493, 5992, 6015, a county judge, whose office was created by Acts 1887, chapter 148, has no right to vote on matters before county court, even when there is a tie vote. (*Post, pp.* 44, 45.)

3. **COUNTIES.** County judge may not vote to issue courthouse bonds.

   In view of Shannon's Code, sections 493, 5992, 6015, a county judge, whose office was created by Acts 1887, chapter 148, cannot vote under Priv. Acts 1919, chapter 736, to issue bonds to be used in remodeling a courthouse, even where there is a tie vote in the county court over which he presides. (*Post, pp.* 44, 45.)

4. **COUNTIES.** Rights of county judge as member of county court.

   There is no conflict between Acts 1887, chapter 148, creating the office of county judge, and Shannon's Code, sections 493, 5992, 6015,

and the former does not amend the latter by implication so as to give a county judge the right to vote as a member of the county court. (*Post, pp.* 45, 46.)

5. **PARLIAMENTARY LAWS.** When presiding officers may vote.
   Where a statute provides that a presiding officer shall cast a deciding vote in case of a tie, and a member of the organization is chosen as presiding officer, as such member, he is entitled to a second vote; but, if presiding officer is not a member of the organization, he can only cast a vote where expressly authorized to do so. (*Post, pp.* 46, 47.)

---

### FROM KNOX.

---

Appeal from the Chancery Court of Knox County.— Hon. Hugh M. Tate, Chancellor.

Frantz, McConnell & Seymour, for appellant.

Jas. G. Johnson, for appellee.

Mr. Justice McKinney delivered the opinion of the Court.

Upon a resolution authorizing the issuance of $125,000 of bonds, the proceeds from a sale of which were to be used in remodeling the courthouse in Knoxville, the justices of the peace, composing the county court of Knox county, voted 18 for the issuance of the bonds and 18 against it. Thereupon the county judge cast a vote for the issuance of said bonds, and he declared the resolution carried.

Chapter 736 of the Acts of 1919, authorized the county court of Knox county to issue bonds for such

purpose not to exceed $125,000 upon a majority of the members of said court voting therefor.

The bill was filed in this cause to enjoin the issuance of said bonds upon the idea that a majority of the members of said court did not vote for their issuance, which is based upon the idea that the county judge was without authority to cast the deciding vote.

The office of county judge of Knox county was created by capter 148 of the Acts of 1887.

It is conceded that none of the legislative enactments, pertaining to the office of county judge, expressly constitute him a justice of the peace, or a member of the county court, or authorize him to vote upon any measure coming before said court.

Learned counsel, however, insists that this is a question of common-law origin, and cites the following authorities in support of his contention:

1. Black's Law Dictionary (2d Ed.), p. 175, where it is said:

"Casting Vote.—Where the votes of a deliberative assembly or legislative body are equally divided on any question or motion, it is the privilege of the presiding officer to cast one vote (if otherwise he would not be entitled to any vote) on either side, or to cast one additional vote, if he had already voted as a member of the body. This is called the 'casting vote.' "

"By the common law, a casting vote sometimes signifies the single vote of a person who never votes; but, in the case of an equality, sometimes the double vote of a person who first votes with the rest, and then, upon an equality, creates a majority by giving a second vote. *People* v. *Church of Atonement*, 48 Barb. (N. Y.), 606;

*Grown* v. *Foster,* 88 Me., 49, 33 Atl., 662, 31 L. R. A., 116; *Wooster* v. *Mullins,* 64 Conn., 340, 30 Atl., 144, 25 L. R. A., 694.''

2. In 29 Cyc., 1690, it is said: ''Casting Vote.—(a) Nature of.—By the common law a casting vote sometimes signifies the single vote of a person who never votes, except in the case of an equality, and sometimes the double vote of a person who first votes with the rest, and then, upon an equality, creates a majority by giving a second vote.

''(b) Right to Cast.—The presiding officer of a deliberative body, having a definite number of members, has the power in case of a tie to give the casting vote.''

3. McQuillin on Municipal Ordinances, section 102, states the following:

''Casting Vote by Presiding Officer.—Where the presiding officer or mayor is a member of the council or governing body, unless expressly forbidden by law, it is generally held that he may not only vote on all questions as a constituent member, but where the charter gives him a casting vote in event of a tie he may vote the second time. The Vice President of the United States, not being a member of the Senate, as presiding officer of the Senate, has no vote unless the vote be equally divided. The same rule generally applies to the lieutenant governors of the various States who are the presiding officers of the several State senates. But the speaker of the National House of Representatives, and also the speakers of the houses of representatives of the several State Legislatures have a vote as a member of the body over which they preside,

Reeder v. Trotter.

and also, where the law so provides, a second or casting vote in event of equal division."

The above authority is supported by the following note:

"By the common law a casting vote sometimes signifies the single vote of a person who never votes; but in the case of an equality sometimes the double vote of a person who first votes with the rest, and then upon an equality, creates a majority by giving a second vote. 1 Bl. Com., 181 note, 478 note; *People ex rel.* v. *Rector, etc.,* 48 Barb. (N. Y.), 603, 606.''

An examination of the cases cited in support of the foregoing texts discloses that in each instance the authority to cast a deciding vote was expressly conferred upon the presiding officer by statute or municipal charter.

Where the presiding officer is a member of the body, and, as such member, entitled to vote with the other members, the fact that he was chosen to act as presiding officer would not deprive him of that privilege. For example, in a county where the county court is presided over by a county chairman, he, being a member of said court, clearly has the right to vote. In our state legislature each body chooses one of its members, as speaker. The Constitution is silent as to their right to vote, but being members they unquestionably have the right, and have always voted as other members. The same is true as to the speaker of the House of Representatives in the National Congress. The Constitution of the United States expressly provides that the Vice President shall be President of the Senate, but shall have no vote unless they be equally divided. Not a single case has

been brought to our attention in which it has been held that a presiding officer of any organization, in the absence of express authority, has a right to vote where he is not a member of such organization.

In Bouvier's Law Dictionary, 430, the author says:

"A casting vote neither exists in corporations or elsewhere unless it is expressly given by statute or charter, or, what is equivalent, exists by immemorial usage."

Dillard on Municipal Corporations, vol. 2, section 513, says:

"The question whether the mayor of a city shall be regarded as a member of the council is one of legislative intent. It is within the power of the legislature to confer upon him the functions of a member of the council in every respect, and if the legislation on the subject calls for that construction he will be so regarded. But in American jurisprudence the mayor is not necessarily a constituent part of the legislative power of the municipality. His functions are intended to be, and usually are, of an executive or administrative character, and whatever power he may at any time exercise in the legislative functions of a municipal government is never to be implied, but must find its authority in some positive statute. In this view, in the absence of a statute necessarily implying that he has the same standing in the council, as any other member, and particularly when his powers are expressly stated to be to preside at meetings and to give a casting vote in case of a tie, he is only a member of the council, *sub modo,* and to the extent of the powers specially committed to him."

In *Jacobs* v. *San Francisco,* 100 Cal., 121, 34 Pac., 630, the supreme court said: "The mayor is not . . . necessarily a constituent part of the legislative power of the municipality. His functions are of an executive or administrative character. . . . Whatever power he may at any time exercise in the legislative functions of a municipal government is never to be implied, but must find its authority in some positive statute."

In *Cate* v. *Martin,* 70 N. H., 135, 46 Atl., 54, 48 L. R. A., 613, Judge Blodgett for the supreme court of that State said: ".The mayor of a city is not an alderman or councilman of the city in a general or proper sense of those terms. He is designated in the statutes as the 'principal officer' and the 'chief executive' of the city; . . . and both properly and primarily his duties are executive and administrative. . . . He is not a member of either branch of the city councils unless expressly made such by law; . . . and when this is the case, it is to the extent of such powers as are specially committed to him, and no further, that he is a part of the city council. . . . He is 'not one of its own members in the sense in which an alderman is;' . . . nor has it been understood that he is to be counted in determining the presence of a quorum [citing authorities]. Applying the principles of these authorities (and none have been found to the contrary) to the statutory provisions relating to mayor and aldermen cited in behalf of the defendants, the result is indutiably to establish the proposition that while the mayor is a constituent part of the . . . board for some special purposes, he sits and acts in the board not in the capacity of an alderman, but in the capacity of *ex officio*

presiding officer, and exercises those powers only which have been specially committed to him as the chief executive of the city.''

If the mayor, who presides at the council meeting, is not a member thereof, nor entitled to vote, in the absence of express legislative authority, then by the same parity of reasoning it seems to us that, in the absence of such express authority, the county judge cannot be held to be a member of the county court and clothed with authority to vote as a member thereof, or vote in case of a tie.

Section 493 of Shannon's Code is as follows: ''Every county is a corporation, and the justices in the county court assembled are the representatives of the county, and authorized to act for it.''

Section 5992 of Shannon's Code provides that: ''The county court consists of the justices of the county. It is divided into a quarterly and monthly court, the first being held by all or such number of the justices necessary to transact business, the latter by the chairman or judge of the county court. ''

Section 6015 of said Code provides that: *"Vote on appropriations.*—In making appropriations of money, the vote of the justices present shall be taken by ayes and noes, the clerk calling and recording the name of each justice, together with his vote, aye or no, as it is given, which shall be entered on the minutes, together with the items of allowance.''

It will thus be seen that the legislature says plainly and expressly that the county court shall consist of the justices of the county, that such justices are the representatives of the county and authorized to act for it,

Reeder v. Trotter.

and that in making appropriations of money the vote of the justices shall be taken by ayes and noes.

It being apparent, therefore, that the control of this county corporation is lodged exclusively in the justices of the peace, by what rule of construction are you going to say that the county judge is a justice of the peace, or a member of the county court, when the act creating the office of county judge does not say so? And where is the authority for holding that in the appropriation of money he has as much voting authority as any of the justices composing the court? Such authority, it seems to us, is wanting and cannot be implied in the face of the plain language of the statutes set out above.

To hold that the county judge does not possess this authority in no wise deprives him of any of the powers conferred upon him by statute, viz., to exercise the judicial functions of his office, and to preside over the sessions of the quarterly county court. To hold otherwise would deprive the justices of the peace in a measure, of their authority, expressly conferred upon them by statute, and transfer it to the county judge, by implication, when no such authority is expressly given him by the statute in which his duties are enumerated.

Upon principle, we think that, in the absence of express authority, only those can vote who are members of the court, and that, since the legislature has said implicitly that the court shall consist of the justices of the peace of the county, the county judge cannot be adjudged a member by implication. There is no conflict between the statute, which provides that the county court shall consist of the justices of the peace in the

county, and the statute which creates the office of county judge; therefore the latter does not amend the former by implication. The court cannot arbitrarily say that the county judge has a right to vote in the absence of authority to that effect.

If a county judge can vote in a case of this kind, then you would have the anomaly of the court consisting of one more member than when it was presided over by a chairman. There are 38 justices of the peace in Knox county. If the county court were presided over by a chairman, then there would be 38 votes in the court, since the chairman is necessarily a member of said court. On the other hand, if presided over, as it is, by a county judge, then there would be 39 votes in the court. Evidently the legislature did not intend to make a distinction of this kind.

A good deal has been said about the right of a presiding officer to cast the deciding vote. The rule as to this is substantially as follows: Where the statute provides that the presiding officer shall cast the deciding vote, in case of a tie, and a member of the organization is chosen as presiding officer, as such member, he is entitled to a vote, and, in case of an equality, he is entitled to a second vote. If, however, he is not a member of the organization, then he can only cast a vote, even in case of a tie, where he is expressly authorized so to do. This rule, however, has no application to the facts of this cause.

It is further insisted that since the county court is a constitutional court, composed of the justices of the peace of the county, and since their number is prescribed and limited by the constitution, any attempt to con-

Reeder v. Trotter.

stitute the county judge a member thereof would result in increasing the number beyond the constitutional limit, and would therefore be void.

Having held that the legislature did not undertake nor intend to make the county judge a member of the county court, it is unnecessary for us to pass upon this question.

The court of civil appeals held that the county judge was without authority to vote on the resolution carrying the right to issue said bonds, and the decree of that court will therefore be in all things affirmed.